**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CASTORO & CO., INC., | |
| Plaintiff, | Civil Action No. 14-1305 (MAS) (DEA) |
| v. | |
| HARTFORD ACCIDENT AND INDEMNITY COMPANY, INC., et al., | **MEMORANDUM OPINION** |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff Castoro & Co., Inc.'s ("Castoro" or "Plaintiff") Motion for Partial Summary Judgment (Pl.'s Mot., ECF No. 57); Defendant Sentry Insurance Co.'s ("Sentry") Motion for Partial Summary Judgment (Sentry's Mot., ECF No. 59); and Defendant Hartford Accident and Indemnity Company, Inc.'s ("Hartford") Motion for Partial Summary Judgment (Hartford's Mot., ECF No. 60).

Sentry opposed Plaintiff's motion (ECF No. 59)[1] and Hartford designated its motion papers (ECF No. 60) as its opposition to Plaintiff's motion. Subsequently, Plaintiff filed a corrected certification and Local Civil Rule 56.1 Statement of Undisputed Material Facts ("SUMF") in support of its motion. (ECF No. 61.) Plaintiff opposed Sentry and Hartford's motions (ECF No. 67), and Hartford and Sentry replied in support of their respective motions (ECF Nos. 68, 69, respectively).

---

[1] Sentry filed identical briefs for its opposition (ECF No. 58), and in support of its own motion (ECF No. 59).

The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, and for other good cause shown, Plaintiff's motion is **denied**, Sentry's motion is **granted**, and Hartford's motion is **granted in part and denied in part**.

## I. BACKGROUND

Based on the parties' respective Local Civil Rule 56.1 Statements, the following material facts are not in dispute:

1. Sentry is the successor of Hardware Mutual Casualty Company, which issued a number of comprehensive general liability ("CGL") policies to Castoro from 1953 to 1967.[2] (Sentry's SUMF ¶¶ 1-3, ECF No. 59-1; Pl.'s Resp. to Sentry's SUMF ¶¶ 1-3, ECF No. 67-11.)

2. Each CGL policy that Sentry issued to Castoro between 1953 and 1967 contained a "per accident" limit and an "aggregate" limit, and each policy period was for one year. (Sentry's SUMF ¶ 2; Pl.'s Resp. to Sentry's SUMF ¶ 2.)

3. "Hartford issued thirty-six general liability policies to Castoro spanning the period from February 24, 1966 to February 24, 2002." "The Hartford policies issued to Castoro in effect from February 24, 1966 to February 24, 1987 (the 'Potentially Applicable Hartford Policies') do not contain Absolute Pollution Exclusions . . . ." (Hartford's SUMF ¶ 1, ECF No. 60-52; Pl.'s Resp. to Hartford's SUMF ¶ 1, ECF No. 67-12.)

---

[2] The fact that Hartford issued policies to Castoro is undisputed. Sentry and Castoro dispute, however, whether Sentry issued policies to Castoro for certain years. Nevertheless, whether Sentry issued these particular policies is not material to the partial summary judgment motions raised by Sentry and Castoro as both motions only request the Court to determine whether the "per accident" limit applies as opposed to the "aggregate" limit.

2

4. Each Hartford policy at issue contains a "per occurrence" limit and an "aggregate" limit. (Hartford's SUMF ¶¶ 5-6; Pl.'s Resp. to Hartford's SUMF ¶¶ 5-6.)

5. The Hartford policies issued from 1967 to 1972 define "occurrence" as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." (Hartford's SUMF ¶ 3; Pl.'s Resp. to Hartford's SUMF ¶ 3.)

6. The Hartford policies issued from 1973 to 2001 define "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." (Hartford's SUMF ¶ 4; Pl.'s Resp. to Hartford's SUMF ¶ 4.)

7. "The Hartford Policies incepting on or after February 24, 1987 contain Absolute Pollution Exclusions." For example, the pollution exclusion in the Hartford Policy in effect from February 24, 2001 to February 24, 2002 provides that the insurance does not apply to:[3]

(1) . . . "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

---

[3] While Hartford includes only this lone example as representative of all the pollution exclusions in its policies, the Court notes that the pollution exclusions in other Hartford Policies issued to Castoro consist of different, albeit similar, language. (*See* Druck Cert. Exs. E, F, G, ECF No. 60-2.) Castoro, however, does not raise any objection to Hartford's use of this representative example; does not dispute Hartford's material undisputed fact that pollution exclusions were included in the policies on or after February 24, 1987; and does not differentiate between any of the various pollution exclusions. (*See* Pl.'s Resp. to Hartford's SUMF ¶ 10.) Moreover, the Court does not find any of the differences material to the analysis and outcome of the pending partial summary judgment motions.

3

> (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.
>
> (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;
>
> (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or
>
> (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. . . .
>
> (2) Any loss, cost or expense arising out of any:
>
> (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or
>
> (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."

(Hartford's SUMF ¶ 10; Pl.'s Resp. to Hartford's SUMF ¶ 10.)

8. From 1931 through the present, Castoro has been in the business of excavation and paving. (Hartford's SUMF ¶ 19; Pl.'s Resp. to Hartford's SUMF ¶ 19.)

9. On numerous occasions between "the late 1950's" and 2009, Castoro used the Grovers Mill, West Windsor Property as a disposal site for a variety of waste materials from local construction sites.[4] (Pl.'s Corrected SUMF

---

[4] Although the parties dispute the precise characterization of the dumpings, the parties' statements of material facts do not dispute the general timing and quantity of the dumping conduct. (Pl.'s Corrected SUMF ¶¶ 21, 25, ECF No. 61-2; Hartford's Resp. to Pl.'s SUMF ¶¶ 21, 25, ECF No. 60-52.)

4

¶¶ 21, 25, ECF No. 61-2; Hartford's Resp. to Pl.'s SUMF ¶¶ 21, 25, ECF No. 60-52.)

10. After the New Jersey Department of Environmental Protection ("NJDEP") investigated the Grovers Mill site in 1975 and again in 1984, the NUS Corporation, under the direction of the United States Environmental Protection Agency, tested the Grovers Mill site for the presence of contaminants. (Hartford's SUMF ¶¶ 25-30; Pl.'s Resp. to Hartford's SUMF ¶¶ 25-30.)

11. In 1989, the NJDEP identified Castoro as the sole party responsible for the contamination at the site.[5] (Hartford's SUMF ¶ 31; Pl.'s Resp. to Hartford's SUMF ¶ 31.)

12. Castoro notified Sentry and Hartford of the contamination at the Grovers Mill site on February 8, 2005. (Hartford's SUMF ¶ 33; Pl.'s Resp. to Hartford's SUMF ¶ 33.)

13. In August 2013, Castoro filed this action against Sentry and Hartford seeking, among other things, a declaratory judgment compelling coverage of Castoro's remediation costs. (Compl. ¶¶ 1-61, ECF No. 1-1.)

---

[5] Plaintiff does not dispute this fact but provides that "Castoro has identified 222 Possible Responsible Parties (some may be duplicates)." (Hartford's SUMF ¶ 31; Pl.'s Resp. to Hartford's SUMF ¶ 31.)

5

## II. DISCUSSION

### A. Parties' Positions

#### 1. Plaintiff's Motion and Opposition to Sentry and Hartford's Motions

Castoro moves for partial summary judgment against Hartford and Sentry (the "Insurers") on the issue of whether Castoro's claim for coverage is subject to the "per occurrence" and "per accident" limits, as opposed to the aggregate policy limits under Castoro's policies with both Insurers.[6] Castoro begins by invoking the doctrine of reasonable expectations and argues that an aggregate limit must reasonably cover multiple occurrences. (Pl.'s Moving Br. 6-10, ECF No. 57-3.) Plaintiff asserts that as lay persons, Castoro's owners (Joseph Castoro and his sons) would reasonably apply the "aggregate" limit where multiple occurrences arise under an insurance policy. (*Id.* at 6-7.) According to Plaintiff, Castoro's reasonable expectations should be enforced even despite contrary policy language. (*Id.* at 7.)

After defining "occurrences" to mean "causal events," as opposed to the number of injuries or "effects," Plaintiff argues that each instance of dumping pollutants constitutes a distinct occurrence. (*Id.* at 10-18.) Plaintiff reasons that each dumping was separated by "temporal gaps," "differing contracts with differing parties in differing locations," over a period of fifty years. (*Id.*) In support of this proposition, Plaintiff primarily relies on *Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc.*, 854 A.2d 378 (N.J. 2004). (*See* Pl.'s Moving Br. 11-12.) There, an employee had "engaged in numerous credit-application frauds . . . leading to the sale of twenty-seven automobiles to customers who otherwise would not have qualified for credit." *Auto Lenders Acceptance Corp.*, 854 A.2d at 381. The New Jersey Supreme Court found that each sale "caused a separate, direct loss of property," thus constituting separate occurrences under an insurance

---

[6] Plaintiff's Notice of Motion fails to specify the relief Plaintiff seeks on summary judgment. The Court interprets Plaintiff's brief to request partial summary judgment that the "aggregate" limit applies as opposed to the "per occurrence" limit under the relevant Hartford and Sentry policies.

6

policy. *Id.* at 397. Plaintiff argues that its claims for coverage are similarly based on numerous distinct contracts, dumpings, truckloads, and types of pollutants. (Pl.'s Moving Br. 11-12.)

Plaintiff then asserts that the *Owens-Illinois* continuous-trigger doctrine governs here, and requires the application of the aggregate limit due to multiple occurrences per year. (Pl.'s Moving Br. 18-25 (citing *Owens-Illinois, Inc. v. United Ins. Co.*, 650 A.2d 974, 995 (N.J. 1994)).) According to Plaintiff, the Insurers incorrectly apply one occurrence to the initial dumping in each year, and improperly consider subsequent dumpings as part of those initial occurrences. (Pl.'s Moving Br. 18-19.) This approach, Plaintiff argues, effectively amounts to a non-cumulation clause, which *Owens-Illinois* held unenforceable. (*Id.* at 19-23.) Plaintiff, therefore, concludes that "each initial depositing of [pollutants] . . . is an Occurrence triggering coverage." (*Id.* at 24.)

In opposition to Hartford's argument that a pollution exclusion precludes coverage for Castoro, Plaintiff responds that the pollution exclusion can only apply to "traditional environmental pollution." (Pl.'s Reply Br. 16, ECF No. 67.) Castoro argues that "traditional environmental pollution" is defined as "environmental catastrophe related to intentional industrial pollution." (*Id.* at 17.) In applying this definition, Castoro contends that the claims in this case are "not industrial" because Castoro is a "mom & pop contracting business attempting to fill a mined-out sand pit to grade." (*Id.*) Castoro further argues that its coverage claims do not relate to "environmental catastrophe" because the materials it left on its site "seemed innocuous at the time" and "[t]here [was] no intentional pollution." (*Id.*) Finally, Plaintiff adds that the pollution level was too low to constitute "catastrophe." (*Id.*)

2. Sentry's Cross Motion and Opposition to Plaintiff's Motion

Sentry opposes Plaintiff's motion and cross-moves for partial summary judgment "declaring that no more than one accident took place during the term of each Sentry policy at issue herein." (Sentry's Mot. 1, ECF No. 59.) Sentry asserts that its policies with Castoro all covered

7

policy periods lasting one year each, for numerous years in total.[7] (Sentry's SUMF ¶ 2.) According to Sentry, each policy contains "two kinds of limits of liability: a 'per accident' limit, and an 'aggregate' limit." (Sentry's Moving Br. 3, ECF No. 59-2.) Sentry argues that the "per accident" limit is identical to a "per occurrence" limit, and that it limits the recovery payable for a single "accident" or "occurrence." (*Id.* at 4.) On the other hand, Sentry explains that the "aggregate limit is the maximum amount of money that Sentry can be obligated to pay under the life of the policy, regardless of the number of accidents that occur while it is in effect." (*Id.*)

Sentry agrees with Plaintiff that New Jersey's continuous-trigger cases apply. (*Id.* at 12-13 (stating that Sentry's position is consistent with continuous-trigger cases).) Sentry therefore argues that only one "accident" per year is involved in Castoro's claims because all disposals occurred at a single Castoro site. (*Id.* at 5.) In support, Sentry relies heavily on *O-I Brockway Glass Container v. Liberty Mutual Ins. Co.*, No. 90-2797, 1993 WL 910935 (D.N.J. Feb. 10, 1994). Sentry argues that *O-I Brockway* also involved a single contamination site resulting from years of waste disposal, and that the court found only a single cause or "occurrence" for insurance coverage purposes. (Sentry's Moving Br. 8-9.) Sentry claims that this case is similar because only one site is involved: "The contaminants have mingled at and under the site, so that the source of any particular contaminant at the site cannot be traced to any particular disposal location or any particular generator." (*Id.* at 13.)

Sentry then responds to Castoro's "reasonable expectations" argument. First, Sentry argues that Castoro was sufficiently sophisticated to understand the plain language of the relevant policies, especially because Castoro likely had access to a broker. (*Id.* at 17-18.) Sentry further responds that Castoro admits to understanding that a single occurrence is triggered by "one"

---

[7] The number of policies is in dispute but is not material to the pending partial summary judgment motions.

8

occurrence, and that "aggregate" requires multiple "occurrences." (*Id.* at 18.) Sentry concludes by arguing that the Court has no reason to disregard unambiguous language in the policy, and that the policy should be enforced as written. (*Id.* at 20-21.)

### 3. Hartford's Cross Motion and Opposition to Plaintiff's Motion

Hartford opposes Plaintiff's motion and cross-moves for partial summary judgment on the number of occurrences and "Absolute Pollution Exclusion." (Hartford's Mot. 1, ECF No. 60.) Hartford, like Sentry, issued numerous policies that each had a policy period of one year. (Hartford's SUMF ¶ 1; Pl.'s Corrected SUMF ¶ 18.) Again, similar to Sentry, each Hartford policy contained a lower "per occurrence" limit and an "aggregate limit."

With regard to the applicable limit, Hartford references the same group of cases cited by Plaintiff and Sentry, and agrees with Sentry and Plaintiff that the continuous-trigger doctrine applies. (Hartford's Moving Br. 20-25, ECF No. 60-1.) Hartford provides a nearly identical analysis as Sentry, and argues that the "per occurrence" limit is applicable because Castoro's claims amount to only a single occurrence per year. (*Id.* at 25-31.) Further, Hartford explains that the continuous-trigger doctrine supplants conflicting rules of traditional contract interpretation under New Jersey law, and that interpreting aggregate limits to require multiple occurrences does not violate any reasonable expectations of the insured. (*Id.* at 32-37.)

Next, Hartford argues that some of its policies contain an "Absolute Pollution Exclusion" that precludes coverage for Castoro. (*Id.* at 38.) According to Hartford, New Jersey law permits this type of exclusion to apply to "traditional environmental claims," which Hartford asserts encompasses Castoro's coverage claims. (*Id.* at 38-39.) In response to Plaintiff's argument that pollution must be intentional to be excluded under the policy, Hartford explains that neither the exclusion of the policy nor New Jersey law requires intent. (Hartford's Reply Br. 14, ECF No. 68.) Finally, in response to Plaintiff's argument that the pollution exclusion can only apply to

9

"traditional environmental pollution," Hartford contends that the applicable case law does not exclude government-imposed soil contamination claims from the definition of "traditional environmental pollution claims." (*Id.* at 14-15.)

### B. Summary Judgment Standard

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material* fact." *Id.* at 247-48. Therefore, a party opposing summary judgment must do more than rest upon allegations, general denials, or vague statements. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001).

### C. Analysis

#### 1. The "Per Occurrence" Limit versus the "Aggregate Limit"[8]

Here, all the parties agree that the continuous-trigger theory governs the interpretation of an "occurrence." *See Quincy Mut. Fire Ins. Co. v. Borough of BellMawr*, 799 A.2d 499, 502-05 (N.J. 2002) (applying the continuous-trigger theory to environmental contamination cases). In *Owens-Illinois*, the New Jersey Supreme Court adopted the continuous-trigger theory for instances where "progressive indivisible injury or damage results from exposure to injurious conditions . . .

---

[8] Sentry's policies do not define "accident," but Sentry accurately argues, and Plaintiff does not dispute, that "New Jersey law defines an 'accident' in the same manner as an 'occurrence;' namely, as an event neither expected nor intended by the insured." *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 89 F.3d 976, 982 n.2 (3d Cir. 1996); (Sentry's Moving Br. 4 n.3).

10

[under] a CGL policy." 650 A.2d at 995. Here, Plaintiff makes the unusual argument that the continuous-trigger theory applies while seemingly contesting whether the underlying injury is indivisible. (Pl.'s Reply Br. 10.) Nevertheless, the continuous-trigger theory applies because the underlying claims arise from a "progressive indivisible injury."

Plaintiff's SUMF alleges that all relevant contamination occurred on the Grovers Mill, West Windsor Property. (Pl.'s Corrected SUMF ¶¶ 21-48, ECF No. 61-2.) Although Plaintiff divides the Grovers Mill Property into subsections by name, Plaintiff does not allege that the contamination could be divided between the sites such that the causes for each subsection's contamination could be separately determined. (*Id.*) Additionally, Plaintiff argues in its brief that: the pollutants originated from different sources; each "dumping" was composed of different pollutants; and each "dumping" was separated by "temporal gaps" over a fifty-year period. (Pl.'s Moving Br. 11; Pl.'s Reply Br. 5.) None of these arguments, however, relate to whether the *damage* is indivisible. *See Owens-Illinois*, 650 A.2d at 995 (specifying that the application of the continuous trigger theory turns on whether the "damage" is indivisible).

In its reply, Plaintiff argues that test borings of the site "demonstrat[ed] differing debris at differing locations horizontally and vertically," and "at varying depths." (Pl.'s Reply Br. 5.) Again, however, Plaintiff does not argue or allege that the contamination itself could be separated into distinct injuries. In the only instance where Plaintiff directly addresses this issue, Plaintiff argues:

> The injuries at bar are divisible if one looks to the initial action commencing the continuous progression, the input of over . . . 222 sites divisible by discre[]t[e] times and distances, with different waste streams, and 11,646 [t]otal loads separately brought to the site separated by time and distance, *but once released onsite each then indivisible in their damage.*

(Pl.'s Reply Br. 10 (emphasis added).) Thus, Plaintiff concedes that the *damage* is indivisible, and alleges only that each *input* is distinct and divisible. The continuous-trigger theory, therefore,

11

applies.[9] *See Quincy Mut. Fire Ins. Co.*, 799 A.2d at 503 (applying continuous-trigger theory where "the damage that triggers liability . . . cannot be linked to a single event").

Under the continuous-trigger theory, "courts may reasonably treat the progressive injury or damage as an occurrence within *each of the years* of a CGL policy." *Id.* at 505 (emphasis added). In other words, where the continuous-trigger theory applies, the underlying claim amounts to one occurrence per year during the progression of continuing contamination. *Spaulding Composits Co., Inc. v. Aetna Cas. & Sur. Co.*, 819 A.2d 410, 419 (N.J. 2003) ("*Owens-Illinois* declared that long-tail environmental exposure injury and damage . . . would be treated as one occurrence per year . . . ."); *Quincy Mut. Fire Ins. Co.*, 799 A.2d at 506-07 ("[L]osses in an environmental damages case must be treated as an occurrence in each of the periods covered by a [CGL]." (quoting *United States Mineral Prods. Co. v. Am. Ins. Co.*, 792 A.2d 500, 518 (N.J. App. Div. 2002))). Plaintiff fails to present any cases where the court applied the continuous-trigger theory to find multiple occurrences per year. Here, therefore, the "per occurrence" or "per accident" limit applies because only one occurrence exists per policy period.

Moreover, Plaintiff's argument that it reasonably expected the aggregate limit to apply does not alter the analysis. The New Jersey Supreme Court has applied the continuous-trigger theory to constitute one occurrence per year "in large part because of its ability to maximize coverage." *Quincy Mut. Fire Ins. Co.*, 799 A.2d at 514. The continuous-trigger theory maximized coverage because where multiple successive policies, issued by different insurers, covered different "phases" of a continuous progressive environmental injury, the "one occurrence per year" approach would trigger all policies during the relevant contamination period. *See Spaulding*

---

[9] Additionally, Plaintiff relies on *Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc.*, a case unrelated to environmental harms, where the damages resulting from fraudulent transactions were clearly divisible as each transaction constituted "distinct sales to separate purchasers, for separate automobiles." 854 A.2d at 397.

12

*Composits Co.*, 819 A.2d at 419-20. Because this approach reflects "the need for courts to choose one method, and apply it consistently, when allocating liability for progressive injuries," it would be unreasonable to apply an incongruent approach where the same insurers issue the successive policies. *Id.* at 420.[10] Thus, the Court denies Plaintiff's motion and grants Sentry and Hartford's motions with regard to the "per occurrence" and "per accident" limits because the parties do not dispute the indivisibility of the underlying environmental damage, and New Jersey's continuous-trigger doctrine permits only one occurrence per year with regard to a single indivisible injury.

                    2.        Hartford's Motion Regarding the "Absolute Pollution Exclusion"

Under New Jersey law, "exclusions in [an] insurance policy should be narrowly construed." *Nav-Its, Inc. v. Selective Ins. Co. of Am.*, 869 A.2d 929, 934 (N.J. 2005). Nonetheless, if the exclusion is "specific, plain, clear, prominent, and not contrary to public policy, it will be enforced as written." *Id.* (internal citation omitted). Here, the Court finds that the Hartford policies' Absolute Pollution Exclusions only apply to intentional pollution, and there is a genuine dispute of material fact as to whether Castoro possessed the requisite intent.

Although Plaintiff does not dispute that "[t]he Hartford Policies incepting on or after February 24, 1987 contain Absolute Pollution Exclusions,"[11] New Jersey case law limits the application of Absolute Pollution Exclusions to "traditional environmental" claims. (Hartford's SUMF ¶ 10; Pl.'s Resp. to Hartford's SUMF ¶ 10); *Nav-Its*, 869 A.2d at 937. The application of Hartford's pollution exclusions, therefore, turn on whether Castoro's underlying contamination

---

[10] Plaintiff makes a separate "reasonable expectations" argument that the "aggregate" limit is triggered if the underlying claim consists of more than one occurrence. (Pl.'s Moving Br. 9.) The Court, however, need not address this argument because Plaintiff is in agreement with Sentry and Hartford. Sentry and Hartford do not contest that the aggregate limit would apply where multiple occurrences exist, but rather argue that only one occurrence exists per year.

[11] The Court notes that Plaintiff objects to the characterization of the exclusions as "Absolute" but Plaintiff nevertheless concedes that the exclusions are written in the specified Hartford policies. (Pl.'s Resp. to Hartford's SUMF ¶ 12.)

13

damage constitutes "traditional environmental pollution." (Pl.'s Reply Br. 16-17; Hartford's Reply Br. 13-15.)

In *Nav-Its*, the New Jersey Supreme Court examined a similar absolute pollution exclusion and defined "traditional environmental pollution" as "environmental catastrophe related to *intentional* industrial pollution." 869 A.2d at 937 (emphasis added) (citation omitted). *Nav-Its* explained that even when a pollution exclusion's language does not require intent, New Jersey public policy requires intent to avoid unregulated and sweeping elimination of pollution-caused damage coverage. *Id.* at 937-38; *see also Baughman v. U.S. Liab. Ins. Co.*, 662 F. Supp. 2d 386, 397 (D.N.J. 2009) (acknowledging that *Nav-Its* defined "traditional environmental pollution" as "environmental catastrophe related to intentional industrial pollution").

Due to this intent requirement, CGL policies that attempt to exclude all pollution damage actually "include[] coverage for continuous or repeated exposure to conditions, provided that the property *damage*—not the discharge—was 'neither expected nor intended from the standpoint of the insured.'" *Morton Int'l, Inc. v. Gen. Accident Ins. Co. of Am.*, 629 A.2d 831, 847 (N.J. 1993); *see also Nav-Its*, 867 A.2d at 937 (applying the intent requirement in *Morton*, even though the absolute pollution exclusion in *Morton* was expressly limited to "sudden" and "accidental" injuries, unlike the pollution exclusion in *Nav-Its*). Here, Hartford fails to allege that Plaintiff intentionally polluted the Grovers Mill site. Moreover, Plaintiff contends that its polluting conduct was unintentional because the "materials seemed innocuous at the time." (Pl.'s Reply Br. 17.)

As Hartford has failed to demonstrate that there is no genuine dispute of material fact that would satisfy New Jersey's intent requirement, Hartford has failed to establish that it is entitled to summary judgment on its Absolute Pollution Exclusions. The Court, therefore, denies Hartford's Motion as to the Absolute Pollution Exclusions.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Partial Summary Judgment is **denied**, Defendant Sentry's Motion for Partial Summary Judgment is **granted**, and Defendant Hartford's Motion for Partial Summary Judgment is **granted in part and denied in part**. An order consistent with this Memorandum Opinion will be entered.

/s/ Michael A. Shipp

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: September 29th, 2016